Opinion issued March 10, 2011



In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-09-00340-CR

———————————

anthony james dixon, Appellant

V.

THE state of
texas, Appellee



 



 

On Appeal from the 260th
District Court

Orange County, Texas



Trial Court Case
No.
D080417-R

 



 

O P I N I O N

          Appellant,
Anthony James Dixon, appeals a judgment convicting him for attempted aggravated
assault with a deadly weapon.  See
Tex.
Penal Code Ann.
§ 22.02(a)(2) (West Supp. 2008); Burke v.
State, 28 S.W.3d 545, 548 (Tex. Crim. App. 2000) (person commits aggravated
assault by threatening imminent bodily injury and using or exhibiting deadly
weapon during commission of assault); Tex. Penal Code Ann.
§ 15.01 (West 2003) (attempt is more than mere preparation, and it tends
but fails to effect commission of offense intended).  In
four issues, appellant contends the trial court erred by using a single verdict
form, by failing to require unanimity in the acquittal of the greater offense
before consideration of the lesser offense, by failing to instruct the jury on lesser-included
offenses of deadly conduct and reckless driving, and by admitting out-of-court
hearsay statements and a 911 call. 
Determining the trial court did not err in its jury charge and admission
of evidence, we affirm the judgment.

Background

Shortly
before 2:00 a.m. one night in May 2008, the complainant, Cherlyn Kelly, was
a passenger in a truck driven by appellant, whom she lived with in Orange,
Texas.  Kelly was a drug addict who had
relapsed by using crack cocaine and marijuana that night.  Appellant, upset with Kelly for not sharing
her drugs with him, refused to allow her out of the truck.  

When he was
about three blocks from the house where he lived with Kelly, appellant stopped
the truck due to a problem with the gearshift. 
Kelly left the truck, angering appellant.  They argued, with appellant shouting
expletives as her.  Kelly ran twice
around one house and then around a green house at 504 Park.  Appellant chased her in his truck while revving
the engine loudly.  He drove on the lawn
of the green house, striking it and taking bark off a tree.  Kelly stated that had she not fallen under
the house, he would have run over her when he struck the house and tree, and
she would have been killed or seriously injured.  She stated that she feared for her life
during the chase.  The chase ended when
the truck stalled in the middle of the road. 
Kelly was then able to call 911 by using the cell phone of a man who
stopped to help.  After that, she ran to
her apartment, called 911 again, and within a short amount of time, saw the
police arrest appellant.  

Pamela
Brown saw most of these events from her house across the street.  Brown saw appellant arguing with Kelly before
Kelly ran from the truck when it was stopped on the corner of Park and
Fourth.  Brown saw the truck chase Kelly,
who ran screaming.  Brown observed the
truck follow Kelly and leave the roadway. 
Kelly ran around the green house and then between a tree and the house,
before taking a right turn towards Fifth Street.  Brown stated the truck followed Kelly while
the engine was revved up high.  Brown,
however, expressed no opinion whether appellant was actually trying to run over
Kelly. 

Officers
responding to the scene noticed that the truck had damage on the driver’s side
with green paint that appeared to have been transferred from the green-colored
house.  A tree near the house had bark
missing from being struck with the truck. 
Appellant denied striking the house, claiming he had dropped off Kelly
at their apartment.  

The
complainant called 911 twice.  The first
911 call was not admitted into evidence. 
The second 911 call was admitted over appellant’s hearsay objection.  In the call, complainant is emotional with a
quivering voice.  She begins by giving her name and address,
stating “Anthony James Dixon just
tried to run me over again.”  The 911
operator states, “Okay, someone is on the way.” 
Complainant then states, “I am at home, I made it home, somebody’s
probably home.”  The 911 operator asks if
the complainant is hurt and she responds that she is not, explaining that she got
away and made it through the houses.  The
rest of the call consists of the 911 operator obtaining the address and phone
number of the complainant, and telling her that the police are on the way. 

At 1:54
a.m., Officer Kemp was dispatched to the scene, where she stayed for about 20
minutes, until she went to Kelly’s apartment to speak with her.  Officer Kemp described Kelly as “very visibly
shaken, very upset, scared, excited, and crying.”  When Officer Kemp asked her what happened,
Kelly described in detail how appellant tried to kill her by running over her.  Appellant’s attorney lodged a hearsay
objection at trial to Officer Kemp’s description of Kelly’s statements.  

A single indictment charged
appellant with two paragraphs.  The first
paragraph charged aggravated assault by intentionally or knowingly threatening
to cause bodily injury with the truck that was used as a deadly weapon.  The second paragraph charged the lesser-included
offense of attempted aggravated assault. 
The attempted
aggravated assault alleged:

[Appellant] with the specific intent to commit the
offense of aggravated assault, did then and there intentionally and knowingly
use a deadly weapon, to wit: a truck, that in the manner of its use and
intended use was capable of causing death and serious bodily injury, and did
then and there intentionally and knowingly attempt to cause bodily injury to Cherlyn Kelly by trying to run over said Cherlyn Kelly with said truck, that amounted to mere
preparation that tends but fails to effect the commission of the offense
intended.

 

The jury
charge included a single verdict form that allowed the jury three options:  (1) to find appellant guilty of aggravated
assault; (2) if it had a reasonable doubt about that offense, to find appellant
guilty of attempted aggravated assault; or (3) if it had a reasonable doubt
about any offense, to find him not guilty. 
Appellant’s attorney requested lesser-included offenses of deadly
conduct, which he referred to as reckless conduct,[1] and
reckless driving.  The trial court denied
the request.

During deliberations, the jury sent
a written note asking,
“If the panel is not unanimous on the first count but is unanimous on the
second count, do we have to be unanimous on acquittal of first count before
voting on second?”  Appellant told the
court to answer “yes.”  Overruling
appellant’s objection, the trial court answered the question, stating,
“No.  You may find him guilty on Count One
or Count Two or find him not guilty.”  The jury found appellant guilty of attempted
aggravated assault and assessed punishment at 10 years in prison and a $5,000
fine.

Lesser-Included Offenses

In his first issue, appellant
contends the trial court erred by failing to instruct the jury on lesser-included
offenses of deadly conduct and reckless driving.  A defendant is entitled to a jury charge on a lesser-included offense if two prongs
are met.  Flores v. State, 245 S.W.3d 432, 439
(Tex. Crim. App. 2008).  First,
the defendant must request an instruction on a lesser-included offense of the charged offense under article 37.09
of the Texas Code of Criminal Procedure.  Id.; Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006).  Second, there must be “some evidence” that if
the defendant is guilty, he is guilty only of the lesser-included offense.  Flores,
245 S.W.3d at 439. 


A.              
Analysis of First Prong

Both deadly conduct and reckless driving meet the first prong
for lesser-included offenses based on the indictment in this case.  

1.                
Applicable Law

For the first prong, the determination of whether an offense is a lesser-included
offense of the alleged offense is a question of law that does not depend on the
evidence to be produced at trial; rather, it depends on the elements in the
charging instruments.  Hall v. State, 225 S.W.3d
524, 535 (Tex. Crim. App. 2007).  

An offense is a lesser-included offense if:

(1)     It is established by proof of the same or
less than all the facts required to establish the
commission of the offense charged;

 

(2)     It differs from the offense charged only in
the respect that a less serious injury or risk of injury to the same person,
property, or public interest suffices to establish its commission;

 

(3)     It differs from the offense charged only in
the respect that a less culpable mental state suffices to establish its
commission; or

 

(4)     It consists of an attempt to commit the
offense charged or an otherwise included offense.

 

Tex.
Code Crim. Proc. Ann. art. 37.09; Aguilar v. State, 263
S.W.3d 430, 435 (Tex. App.—Houston [1 Dist.] 2008, pet. ref’d).


Under the indictment in this case, the offenses of aggravated
assault and attempted aggravated assault require proof of an intentional or
knowing mental state.  “Intentionally”
means that it is the defendant’s conscious objective or desire to engage in
conduct or cause the result.  See Tex. Penal Code Ann. § 6.03(a) (West 2003).  A defendant acts “knowingly” with respect to the
nature of his conduct or the circumstances surrounding his conduct if he is
aware of the nature of his conduct or that the circumstances exist; a defendant
acts “knowingly” with respect to the result of his conduct if he is aware that
his conduct is reasonably likely to cause the result.  See Tex. Penal Code Ann. § 6.03(b).  In contrast, deadly conduct and reckless
driving both have recklessness as the mental state.  See Tex. Penal Code Ann. § 22.05(a) (West 2003); Tex. Transp. Code Ann. § 545.401(a)
(West 1999). 
“Recklessness” means that the defendant is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or
the result will occur.  See Tex. Penal Code Ann. § 6.03(c); Dillon v.
State, 574 S.W.2d
92, 94 (Tex. Crim. App. 1978).

2.                
Analysis 

a.                
Deadly Conduct

Deadly conduct requires evidence
that the appellant recklessly engaged in conduct that placed Kelly in imminent
danger of serious bodily injury.  See
Tex.
Penal Code Ann. § 22.05(a);
Guzman v.
State, 188 S.W.3d
185, 190–91 (Tex. Crim. App. 2006). 
When the indictment alleges that the defendant intentionally or
knowingly threatened to cause bodily injury to the complainant with a deadly
weapon, deadly conduct is established by proof of the same or less than all the
facts to establish aggravated assault.  Guzman, 188 S.W.3d at
190 (alleged act of threatening to cause bodily injury to
complainant with deadly weapon is an act that would place complainant in
imminent danger of serious bodily injury); Bell v. State, 693 S.W.2d
434, 437–39 (Tex. Crim. App. 1985) (same).  In Bell, the Court of Criminal Appeals explains, 

Patently,
threatening another with imminent bodily injury is engaging in conduct.  When that threat is accomplished by the use
of a deadly weapon, by definition the victim is “exposed” to the deadly
character of the weapon and the inherent risk of serious bodily injury.  The danger of serious bodily injury is
necessarily established when a deadly weapon is used in the commission
of an offense.  It follows, therefore,
that proof of threatening another with imminent bodily injury by the use of a
deadly weapon constitutes proof of engaging in conduct that places another in
imminent danger of serious bodily injury.

 

Bell, 693 S.W.2d at 438–439.  Like Guzman
and Bell, the indictment here
alleges aggravated assault and attempted aggravated assault by threatening to
cause bodily injury with a deadly weapon, which satisfies the first prong for
admission of deadly conduct as a lesser-included offense.  Guzman, 188 S.W.3d at 190; Bell, 693 S.W.2d at
439.      

b.               
Reckless Driving

The
elements of reckless driving are that the appellant drives a vehicle with
willful or wanton disregard for the safety of persons or property.  See Tex.
Transp. Code Ann. § 545.401(a); Harris
v. State, 152 S.W.3d 786, 796 (Tex. App.—Houston [1 Dist.] 2004, pet. ref’d).  Willful and
wanton disregard as applied to reckless driving means deliberate and conscious
indifference to the safety of others.  Benge v. State, 94 S.W.3d
31, 36 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).  This meets the first prong for lesser-included
offenses because the elements of reckless driving  are included within the proof
necessary to establish the commission of the offenses of aggravated assault and
attempted aggravated assault as charged in this case.  Benge, 94 S.W.3d at 36; Tex. Code Crim. Proc. Ann. art. 37.09(1).  

B.              
 The Second Prong

Neither deadly conduct nor reckless driving meet the second
prong for lesser-included offenses based on the record in this case.  

1.                
Applicable Law

The second prong requires that the record contain some
evidence that would permit a jury rationally to find that if the defendant is
guilty, he is guilty only of the lesser offense.  Skinner
v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), cert. denied, 523 U.S. 1079, 118 S. Ct. 1526 (1998). The evidence
must establish the lesser-included offense as a valid rational alternative to
the charged offense.  Arevalo v. State, 943 S.W.2d
887, 889 (Tex. Crim. App. 1997).  Anything
more than a scintilla of evidence is sufficient to entitle a defendant to a
lesser charge.  Ferrel v. State, 55 S.W.3d 586,
589 (Tex. Crim. App. 2001).  In
making this decision, the court does not consider whether the evidence is
credible, controverted, or in conflict with other
evidence.  Hall v. State, 158 S.W.3d 470, 473 (Tex.
Crim. App. 2005).  In applying the
second prong, the appellate court must examine the entire record instead of
plucking certain evidence from the record and examining it in a vacuum.  Ramos v. State, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993).   Evidence that shows no offense occurred at
all fails to raise the issue of a lesser-included offense.  Lofton v. State, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001).   

The test for determining whether evidence is legally
sufficient and the test for determining whether to submit a lesser-included offense
jury instruction are “quite different.”  Wasylina v. State, 275 S.W.3d
908, 909 (Tex. Crim. App. 2009).  The
evidence could easily be legally sufficient to support a conviction for a lesser-included
offense but not justify the submission of a lesser-included offense instruction
because the evidence does not show that the defendant is guilty only of the lesser-included
offense.  Id. at 909–910.  

For a lesser-included offense instruction to be required, the
evidence suggestive of the lesser offense must be more than a jury’s disbelief
of evidence establishing the greater offense. 
Hampton v. State,
109 S.W.3d 437, 441 (Tex. Crim. App. 2003).  “[T]here must be affirmative evidence to
rebut the greater element, and the jury may not simply disbelieve evidence
establishing the greater.”  Schmidt v. State, 278 S.W.3d 353, 362
(Tex. Crim. App. 2009); see also Segundo
v. State, 270 S.W.3d 79, 90–91 (Tex. Crim. App. 2008) (holding trial court
properly denied lesser-included offense instruction because evidence showed
only that medical examiner said it was possible for sperm to remain in person’s
vaginal vault for up to 72 hours, but that evidence raised only theoretical
possibility that rape and murder could be disconnected in time and space, and no
evidence in record showed that victim’s rape and murder were, in fact,
disconnected based on medical evidence that they occurred at same time); Enriquez v. State, 21 S.W.3d 277,
278–282 (Tex. Crim. App. 2000) (holding trial court erred by giving lesser-included
offense instruction for lesser amount of marijuana because chemist only tested
one bundle of bundles in evidence); Hampton,
109 S.W.3d at 441 (holding trial court erred by including instruction on lesser-included
offense of sexual assault because complainant testified knife was used during
sexual assault and failure to find knife was not affirmative evidence that no
knife was used). 

2.       Analysis

Appellant contends the second prong is met for deadly conduct
and reckless driving by pointing to a particular portion of Brown’s
testimony.  The record shows the following:

[Attorney]:  Did it look to you
like he was actually trying to run over her?

 

[Brown]:     I couldn’t tell you
that.

 

Appellant interprets this testimony as evidence that
appellant was not trying to run over Kelly. 
But the witness’s answer is indefinite on this point.  It is subject to the interpretation that the
witness could not tell one way or another. 
Counsel did not follow up to clarify the witness’s statement.  Without such clarification, the trial judge,
who heard the words spoken, was in a better position to evaluate the
answer.  The witness later stated that
the truck definitely followed Kelly “through yards and around houses.”

A lesser-included offense
instruction is not required for evidence examined in a vacuum. 
See Ramos, 865
S.W.2d at 465.  The entire
evidence must be examined in context.  See id. 
Brown’s entire testimony shows that she heard an argument before she saw
the truck follow Kelly as it revved its engine while Kelly ran screaming around
a house.  We decline to hold that the
trial court abused its discretion, as appellant suggests, when the testimony as
a whole does not negate intent, and the portion of the testimony appellant points
to is unclear in its meaning.  See id.

Appellant also points to evidence that, at times during the
chase, he drove on a trail used by vehicles and, at the end of the incident,
drove in an opposite direction from that taken by Kelly.  Although those facts might be indicative of lesser-included
offenses of deadly conduct or reckless driving, this evidence does not show
that the defendant is guilty only of the lesser-included offenses, when the
testimony is that he was chasing Kelly while on that trail and almost struck
her with his truck when he chased her around two houses.  See
Wasylina, 275 S.W.3d at 909–910. 


Appellant relies on Benge v. State to support his position
that the lesser-included offense instructions were required.  Benge,
94 S.W.3d at 35–37 (lesser-included
offense instruction of reckless driving should have been given where Benge was charged with aggravated assault and testified she
had no intent to hit complainant and tried to stop truck);
see Rice v. State, 305 S.W.3d 900, 905–907
(Tex. App.—Dallas 2010, pet. granted) (lesser-included offense instructions on
deadly conduct and reckless driving should have been given where Rice testified
he lost his temper, drove around parking lot to look for complainants, was not
trying to hit complainants, and never saw them, and other evidence established
recklessness of appellant’s conduct). 
Unlike Benge and Rice,
here appellant did not testify about any lack of intent to strike Kelly, nor
does any evidence from any source show he lacked the intentional or knowing
mental state.  Instead, the only evidence
shows he argued with Kelly and chased her in his truck while she ran away
screaming, narrowly missing her as she rolled out of the way into a hole
under a house that he struck. 

The facts here are more like those in Coleman v. State, where the Amarillo Court of Appeals determined the lesser-included
instruction was not required.  Coleman v. State, No.
07-08-00395-CR, 2009 WL 2168769 at *2 (Tex. App.—Amarillo
July 21, 2009, no pet.) (mem.
op.) (not designated for publication).  Coleman struck the complainant’s car on four
or five occasions after becoming angry with him, with two of the strikes
occurring in the presence of a police officer. 
Id. at *1.  The investigating officer could not state
whether the accident was caused by Coleman’s faulty brakes or the complainant’s
sudden stop.  Id. at *2.  The Amarillo court determined that the
officer’s inability to speculate about other causes for the collision was not
affirmative evidence that would require lesser-included offense instructions of
deadly conduct and reckless driving.  Id.  The court explained that speculation about
other possible reasons for the event was not a proper basis to include a lesser-included
offense instruction.   Id. at *2–3.

Like Coleman, here the
record lacks affirmative evidence that appellant is guilty only of the lesser-included
offenses of deadly conduct and reckless driving.  We hold the trial court did not err by
refusing to include those lesser-included offenses in its charge to the
jury.  We overrule the first issue.

Admission
of Evidence

In his second and third
issues, appellant contends the trial court erred by admitting hearsay: Kelly’s
statements made to Detective Kemp and Kelly’s statements made to the phone
operator during her second 911 call.  

A.              
 Applicable Law

We review trial court
rulings concerning admission or exclusion of evidence under an abuse of
discretion standard.  Sexton
v. State, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002); Erdman v. State, 861 S.W.2d 890,
893 (Tex. Crim. App. 1993).  A trial court abuses
its discretion when it acts arbitrarily and unreasonably without reference to
any guiding rules or principles.  Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990).

Admission
of an excited utterance is an exception to the rule that hearsay statements are
generally not admissible.  Apolinar v. State, 155 S.W.3d 184,
186 (Tex. Crim. App. 2005).  An excited utterance is “[a] statement
relating to a startling event or condition made while the declarant was under
the stress of excitement caused by the event or condition.”  Id.; see
also Tex. R. Evid.
803(2).  The exception is based on the assumption that
the declarant is not, at the time of the statement, capable of the kind of
reflection that would enable him to fabricate information.  Apolinar, 155 S.W.3d at 186.

B.              
 Statement to Detective Kemp

Appellant contends Kelly’s statement described in Detective
Kemp’s trial testimony is hearsay because it is not an excited utterance.  Appellant complains of the following
narrative conveyed through Detective Kemp:

She explained to me that [appellant] had tried to kill
her by running her—running over her, and she had also spoken in reference to an
earlier incident in which I had made contact with her.  She explained what happened there.  She said that she truly thought that he was
going to kill her, that she—the vehicle was traveling down the road which she
was the passenger, he was driving.  They
had been arguing all throughout, apparently, the course of a weekend.  And he stopped the vehicle—they had been
having trouble with the truck and he stopped the vehicle and I think it
died.  She took that as an opportunity to
run out of the truck.  She took off
running in between two houses there on Park, and he pursued—I guess apparently
was able to get it started and pursued after her in the truck.  And she said that he came in between the two
houses, which would have been— basically he would have been traveling, you
know, in between the two houses and struck—to squeeze the distance between the
two, she said that she had fallen into a ditch, I remember her saying—or fallen
into a hole which caused her to duck down; and she said that’s the reason that
it missed her head.  It narrowly missed her
head.  And then he traveled—struck—was
able to squeeze in between the two by striking the tree and then bouncing and
hitting into the house.

 

Appellant points out that Kelly’s statement was made in
response to questioning by Detective Kemp,[2]
 but the mere fact that the statements
are the result of a question asking what happened does not make the statement
inadmissible.  Apolinar, 155
S.W.3d at 190.  Appellant also
suggests that the passage of one hour between the event and the statement is
too long for an excited utterance in light of evidence that in that time Kelly
left the scene of the offense, walked home, and made two 911 calls to the
police.  

Based on Detective erKemp’s
description of Kelly’s emotional state, the one hour time lapse does not make
the statement inadmissible as an excited utterance.  Detective Kemp described Kelly as “very visibly shaken, very upset, scared,
excited, and crying” as Kelly discussed the event.  This evidence satisfies the requirement for
admission of hearsay as an excited utterance under these circumstances, which
show the statement was not self-serving and was made shortly after the
event.  See id. at 190–91 (testimony that declarant still appeared
nervous or distraught and that there was reasonable basis for continuing
emotional upset will often suffice); Zuliani v. State, 97 S.W.3d
589, 596 (Tex. Crim. App. 2003) (statement made twenty hours after assault
on victim was excited utterance because victim had been with her attacker
during entire period and victim was clearly still very upset and under influence
of attack).  We hold the trial
court did not abuse its discretion by admitting the excited utterance described
by Officer Kemp.

C.              
 911 Call

Appellant
contends the trial court erred by admitting the second 911 call made by
Kelly.  The first 911 call occurred when
she used a bystander’s cell phone as she ran from the scene at the end of the
chase.  That call was not offered into
evidence at the trial and the record does not show the contents of the conversation.  The second 911 call was made when she arrived
at her apartment three blocks away from the scene of the offense.  This call was made before Detective Kemp met
appellant at her house.  Appellant points
out that this was the only item of evidence asked for by the jury during its
deliberations.

Appellant
suggests on appeal that the admission of the 911 call violates the Confrontation
Clause of the United States Constitution, but that argument is waived because
he failed to object on that basis at trial. 
See Blue v. State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000).  Appellant’s sole objection at trial was
hearsay.  In response, the State relies
on the excited utterance exception claiming that the recording itself shows
Kelly was still under the stress of the startling event as she was relating her
location so that she could receive assistance from the police.  As we explain above, erOfficer Kemp, who saw Kelly about an hour after the
event, described her as very shaken,
very upset, scared, excited, and crying. 
Furthermore, we have listened to the 911 call.  Kelly’s voice is quivering and she sounds very
upset, scared, and excited.  We conclude
the trial court did not abuse its discretion by determining the statements in
the 911 call were excited utterances.  See id. at 132;
Zuliani, 97 S.W.3d at
596.  We hold the trial court
did not abuse its discretion by admitting the 911 call.  We overrule appellant’s second and third
issues.

Consideration of Lesser Offense Without Acquittal of Greater Offense

In his fourth issue, appellant contends the trial court’s
response to the note received from the jury during deliberations constituted
harmful, reversible error.  The trial
court answered the jury’s question by telling the jury it did not have to
unanimously acquit of the greater offense before considering the lesser
offense.

Article 37.07 of the Code of Criminal Procedure provides that
“[i]f the jury fails to agree on the issue of guilt
or innocence, the judge shall declare a mistrial and discharge the jury, and
jeopardy does not attach in the case.”  Tex. Code Crim. Proc. Ann. art. 37.07 (West
2008).  Unanimous verdicts are the
final decisions of a jury, delivered to the court after its deliberations are complete.  Id. art. 37.01 (“A ‘verdict’ is a written declaration by a
jury of its decision of the issue submitted to it in the case.”).  Here, the jury unanimously found appellant
guilty of attempted aggravated assault. 
Appellant, however, contends the jury should have unanimously acquitted
him of aggravated assault before it could consider attempted aggravated
assault.  

In making decisions such as the method of discussion,
speaking order, and the like, the jury is left to its own devices.  Barrios v. State, 283 S.W.3d 348, 352 (Tex. Crim. App. 2009).  “So, too, is the order in which the parts of
the jury charge are considered left to the discretion of the jury.”  Id.  The purpose of the law is to allow free
discussion and interchange of opinions among jurors in order that proper
verdicts may be rendered.  Id. at 352–53 (citing Caesar v. State, 117 S.W.2d 66, 68 (Tex.
Crim. App. 1938)).  They may consider the
evidence in light of the entire charge read as a whole.  Id.
(citing Boyett v. State, 692 S.W.2d 512, 516 (Tex.
Crim. App. 1985)).  “Therefore, even if,
and perhaps especially if, the jurors cannot agree as to guilt on the greater
offense, they have already been instructed that they may consider guilt as to
the lesser offense before deciding on a verdict as to the greater offense.”  Id. at 353.  

The trial court’s answer to the jury here complies with the
Court of Criminal Appeals’s suggestion that it “may
be that a better practice is for trial courts to include an instruction that
explicitly informs the jury that it may read the charge as a whole, and to
[include an instruction stating,] ‘or if you are unable to agree, you will next
consider’ . . . so that the charge makes clear to the jury that, at its
discretion, it may consider the lesser-included offenses before making a final
decision as to the greater offense.”  Barrios, 283 S.W.3d at
353.   The trial court’s answer
complies with the Court of Criminal Appeals’s
decision in Barrios that allows a
jury to consider the lesser-included offense without having to first
unanimously acquit of the greater offense. 
See id. 

Appellant suggests that regardless of the Barrios decision, he was harmed by the
purported inconsistency between the original written instructions that he
contends required the jury to unanimously acquit of the greater offense as
compared to the court’s answer to the jury question that did not have that
requirement.  The written instructions,
however, did not expressly require a unanimous acquittal of the greater
offense.  Instead, the jury instructions
told the jury to find appellant guilty of aggravated assault unless it had a
reasonable doubt about his guilt and if it did have a reasonable doubt, to next
consider attempted aggravated assault. 
The original written charge was silent on whether the jury had to be
unanimous in acquitting appellant of the greater offense.  The jury’s question asking for clarification
about whether it had to unanimously acquit him of aggravated assault
demonstrates that the instruction was unclear about this matter.  We conclude that the trial court’s answer to
the jury’s note was not inconsistent with its earlier written instructions and
that it properly described the applicable law. 
See id. at
351–53.  We overrule the fourth issue.

The Verdict Form in the Jury Charge

In his fifth issue, appellant contends the trial court erred
by including a verdict form inconsistent with article 37.07(1)(c)
of the Code of Criminal Procedure. 
Appellant suggests two verdict forms should have been submitted so that
in one the jury would find appellant guilty or not guilty of aggravated assault
and in the other the jury would find him guilty or not guilty of the lesser-included
offense of attempted aggravated assault. 
The State responds that article 37.07(1)(c) is
inapplicable.  

Section 37.07(1)(c) states, “[I]f
the charging instrument contains more than one count or if two or more offenses
are consolidated for trial pursuant to Chapter 3 of the Penal Code, the jury
shall be instructed to return a finding of guilty or not guilty in a separate
verdict as to each count and each offense submitted to them.”  Tex. Code Crim. Proc. Ann. art.
37.07(1)(c). 
This section is an exception to the requirement for a general
verdict.  Id. at art. 37.07(1)(a).  A single
indictment may contain two or more offenses with each offense stated in a
separate count if the offenses arise out of the same criminal episode.  Id. at art. 21.24(a).  A count may contain as many paragraphs
charging the same offense as necessary, but no paragraph may charge more than
one offense.  Id. at art. 21.24(b).

Here, the indictment charged appellant with a single offense
of aggravated assault and its lesser-included offense of attempted aggravated
assault.  See Tex. Code
Crim. Proc. Ann. art. 37.09(4).  “In a
prosecution for an offense with lesser included offenses, the jury may find the
defendant not guilty of the greater offense, but guilty of any lesser included
offense.”  Id. at art. 37.08.  Furthermore, the
Code provides that if a defendant is prosecuted for an offense that includes
within it lesser offenses and he is convicted of an offense lower than that for
which he is indicted, the verdict upon the first trial shall be considered an
acquittal of the greater offense.  Id. at art. 37.14.  Because appellant
was not charged with separate counts and no separate offenses were consolidated
for trial, article 37.07(1)(c) is inapplicable. 
See id. at
art. 37.07(1)(c). 
We hold the trial court properly instructed the jury to opt between
aggravated assault, attempted aggravated assault, and not guilty in a single
general verdict form.  See id. at art.
37.07(1)(a).  We
overrule the fifth issue. 




Conclusion

          We affirm the judgment of
the trial court. 

 

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel consists of Chief Justice Radack and Justices
Alcala and Bland.

 

Publish.  Tex. R. App. P. 47.2(b).

 











[1]      The
State does not contend that the trial court failed to understand appellant’s
request for reckless conduct was a request for deadly conduct.  See
Carmen v. State, 276 S.W.3d 538, 548 n.3 (Tex. App.—Houston [1st Dist.]
2008, pet. ref’d) (holding error is preserved if
trial court understands basis of appellant’s request for lesser included
offense instruction).





[2]           Evidence that a
statement is made in response to questioning in relevant to whether a statement
violates the Confrontation Clause.  See Wall v. State, 184 S.W.3d 730, 741
n.40 (Tex. Crim. App. 2006); Spencer v.
State, 162 S.W.3d 877 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d).  Appellant
made no Confrontation Clause objection at trial and does not assert that issue
in this appeal.  We also note that appellant cites two cases as his authority, but neither case mentions
exited utterances.  See Fisher v. State, 252
S.W.3d 375
(Tex. Crim. App. 2003)
(discussing present sense impression exception to
rule against hearsay); Hughes v.
State, 128 S.W.3d 247 (Tex. App.—Tyler 2003, pet. ref’d) (same).